J-S68039-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RANDY EUGENE WAID, | : | |
| | : | |
| Appellant | : | No. 436 WDA 2016 |

Appeal from the PCRA Order September 11, 2014,
in the Court of Common Pleas of McKean County,
Criminal Division at No(s): CP-42-CR-0000621-2010, CP-42-CR-0000622-
2010, and CP-42-CR-0000626-2010

BEFORE: SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED NOVEMBER 18, 2016**

Randy Eugene Waid (Appellant) appeals *nunc pro tunc* from the order

which denied his petition filed pursuant to the Post Conviction Relief Act

(PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

We summarize the background of this case as follows. Appellant was

charged at three separate docket numbers for numerous crimes related to

the ongoing sexual abuse of his daughter (Victim). He was tried by a jury in

December of 2011. Victim, who was 23 years old at the time of trial,

testified that Appellant began sexually abusing her in 2000, when she was

12 years old. Her parents were divorced and she and her three younger

siblings visited Appellant every other weekend and more frequently during

the summer. Victim testified that Appellant first made her perform oral sex

_____

*Retired Senior Judge assigned to the Superior Court.

on him, and that subsequently led to Appellant and Victim having sexual intercourse. She testified that this happened "a couple times a month" for "around a year." N.T., 12/5/2011, at 97. When Victim was fourteen years old, Appellant moved into the same school district as the children's mother, so Victim saw Appellant more frequently. The sexual abuse continued, and Appellant also began performing anal sex on Victim. At some point thereafter, Appellant obtained primary physical custody of Victim and her younger sister. Victim testified that, at that point, the abuse happened "more frequently." *Id*. at 121. When Victim was seventeen years old, Appellant again moved residences, and Victim and her sister continued living with Appellant while the abuse continued. Victim moved out of Appellant's home in 2006 when she was eighteen years old, and the abuse stopped at that point. Victim reported the abuse in 2010. In addition, Victim testified that she could only recall Appellant being away from home for one period of time due to a kidney transplant.

Appellant testified at trial that he never committed any of the acts Victim has accused him of doing. Appellant testified about his health issues, specifically that he was on dialysis and eventually had a kidney transplant on November 1, 2000. He further testified that due to the medications he was taking, he suffered from erectile dysfunction, *i.e.*, his "soldier wouldn't stand up no more." N.T., 12/6/2011, at 13. Moreover, Appellant testified that he lived with his mother for a month after undergoing hernia repair surgery.

Additionally, Appellant testified that he was hospitalized for a week in 2005 due to the loss of his transplanted kidney, and his mother lived with them for the six months following.

On December 6, 2011, the jury returned a verdict finding Appellant guilty of 22 sexual-abuse-related charges and not guilty of others.[1] Appellant was sentenced to an aggregate term of 42 to 84 years of incarceration. Appellant did not file a direct appeal.

On December 5, 2012, Appellant *pro se* filed a PCRA petition. Counsel was eventually appointed, but did not file an amended petition. A hearing was held on the petition on June 25, 2014, and the PCRA court denied Appellant relief. Appellant, through counsel, filed an appeal to this Court, which subsequently dismissed the appeal for Appellant's failure to file a docketing statement pursuant to Pa.R.A.P. 3517. On March 20, 2015, Appellant *pro se* filed a second PCRA petition, alleging that PCRA counsel was ineffective for failing to file a docketing statement and thereby failing to preserve his right to file an appeal. New counsel was appointed and a hearing was held. On January 6, 2016, the PCRA court denied Appellant's PCRA petition as untimely filed.[2] On January 15, 2016, Appellant filed a

---

[1] Appellant was charged at three separate docket numbers because the abuse happened at three different locations which were spread over three different magisterial districts. The cases were tried together.

[2] Appellant's March 20, 2015 PCRA petition was filed more than one year after his judgment of sentence became final. Thus, it was patently untimely filed. **See** 42 Pa.C.S. § 9545(b) ("Any petition under this subchapter,

motion for reconsideration[3] and, after argument, the court granted the motion and reinstated Appellant's appellate right to appeal *nunc pro tunc* the denial of his first PCRA petition.[4] This appeal followed.

Appellant presents the following issues for our consideration:

A. Was trial counsel ineffective for failing to seek a continuance of trial in order to obtain and introduce hospital records at trial to corr[o]borate his testimony that he was not at his residence when the alleged victim said he assaulted her?

B. Was trial counsel ineffective for failing to investigate whether or not any of … Appellant's numerous prescribed medications or his long-standing kidney condition likely caused him to suffer from erectile dysfunction?

Appellant's Brief at 4 (unnecessary capitalization and suggested answers omitted).

___

including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves [one of the enumerated exceptions set forth in section (b)(1).]"). In addition, "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). Initially, the PCRA court held that Appellant did not meet his burden in demonstrating when he learned of this Court's dismissal of his appeal.

[3] In the motion for reconsideration, counsel for Appellant provided the PCRA court with documentation that the clerk of courts sent Appellant a copy of the dismissal notice on February 19, 2015. Thus, the March 20, 2015 petition was filed within the 60 day timeframe.

[4] The PCRA court's Pa.R.A.P. 1925(a) opinion states that it granted Appellant's motion for reconsideration and "reinstated [Appellant's] direct appeal rights." PCRA Court Opinion, 5/9/2016, at 2 (unnumbered). Despite this language, it is clear from the opinion filed by the PCRA court that it was reinstating Appellant's right to appeal from the denial of his first PCRA petition, not reinstating Appellant's rights to a direct appeal.

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record. However, this Court reviews the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (internal quotation marks and citations omitted).

As Appellant's claims pertain to the alleged ineffective assistance of his trial counsel, we further observe the following.

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ...
>
>> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal quotation marks and citations omitted).

Both issues pertain to counsel's ineffective assistance with respect to the procurement and introduction at trial of Appellant's medical records. Appellant first argues that these medical records "would have served to corroborate [Appellant's] testimony that there were blocks of time when he was not even at his residence to exercise his custody rights."[5] Appellant's Brief at 8. Thus, he argues that Victim's failure to mention these instances would have undermined her testimony.

With respect to the time periods of late November 2000 through New Year's 2001, the one month in 2002 or 2003, and the month in the winter of 2004, Appellant has failed to establish that his claim has arguable merit. Appellant's cited trial testimony indicates that Appellant was not staying in the hospital during those times. Rather, for the time periods of late November 2000 through New Year's 2001 and the one month in 2002 or 2003, Appellant was staying with his mother, and for the month in the winter of 2004, Appellant stayed at a "Neville house" through UPMC. N.T., 12/6/2011, at 12, 14, 23-24. In his appellate brief, Appellant does not cite to any place in the more than 200 pages of medical records where there is an indication that he was staying either at his mother's house or a Neville

---

[5] Appellant suggests that these records would have shown that he was hospitalized from November 1-21, 2000 and that he would have gone to his mother's home to recuperate until the new year. He also states that he had hernia repair surgery in 2002 or 2003, and spent the month after with his mother. Finally, he claims that in the winter of 2004, Appellant resided in Pittsburgh for a month for treatment for his failing transplanted kidney. **See** Appellant's Brief at 8.

house during those discrete time periods. Therefore, he has failed to persuade us that his claim in this regard has arguable merit.

With respect to Appellant's claim as it relates to his hospital stay during November 2000, Appellant has failed to establish prejudice. As noted by Appellant, Victim testified that Appellant was in the hospital for "[n]ot longer than a couple of weeks" following his kidney transplant. N.T., 12/5/2011, at 138. When asked when he had the transplant, Victim recalled "November 2000 – I think it was November 2001."[6] *Id.* at 137. Appellant testified that he had a kidney transplant on November 1, 2000 and remained hospitalized until approximately November 21, 2000. N.T., 12/6/2011, at 11. Notwithstanding Appellant's failure to cite to the portion of the medical records which corroborate Appellant's testimony on this point, assuming *arguendo* that they do, we are unpersuaded that their absence was so prejudicial as to deny Appellant a fair trial, particularly in light of the testimony set forth above. Indeed, Victim and Appellant both testified consistently that Appellant was in the hospital for weeks as a result of a kidney transplant.[7] Based on the foregoing, Appellant has failed to persuade

---

[6] On cross examination, Victim indicated that she was not sure of the date of Appellant's transplant. N.T., 12/5/2011, at 152.

[7] Moreover, in his first issue, Appellant fails to develop any meaningful argument with respect to whether counsel had a reasonable basis for not admitting the medical records and whether the result of his trial would have been different even if they had been admitted to corroborate the above testimony and the jury believed that testimony. Appellant's failure in this regard further supports our conclusion that he has failed to establish he is

this Court that he is entitled to relief on his first issue. **Commonwealth v. Miner**, 44 A.3d 684, 688 (Pa. Super. 2012) ("It is an appellant's burden to persuade us that the PCRA court erred and that relief is due.").

In Appellant's second issue, he essentially argues that his counsel was ineffective for failing to investigate whether the medications he was taking caused erectile dysfunction, thus negating the possibility that he had sexual intercourse with Victim. Appellant's Brief at 9. Appellant contends that counsel received the records during trial, but did not seek to have them admitted. Appellant further suggests that counsel was ineffective for not researching the issue of whether the prescriptions or dialysis caused erectile dysfunction to determine whether a medical expert witness would be helpful at trial. **Id.** at 9-10.

In addressing Appellant's claim, the PCRA court observed the following:

> During unspecified periods [Appellant] was taking medications prescribed for his renal medical problems and [Appellant] claims that some of them have the side effect of erectile dysfunction. He claims that when he was in prison he obtained the list of drugs that he had been prescribed over the years that he was being treated for renal failure and other ailments and that he then checked the Physicians' Desk Reference and found that erectile dysfunction could be a side effect of some of the drugs. This was not known by him nor by [trial counsel] prior to the

entitled to PCRA relief. **Commonwealth v. Bracey**, 795 A.2d 935, 940 n.4 (Pa. 2001) ("Such an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief.").

trial and this Court cannot be sure that the information is correct, [Appellant] not being capable of testifying as an expert witness to the effect of any drugs. The [PCRA c]ourt also has no evidence as to what drugs were prescribed at any particular period of time. Most important in this [c]ourt's analysis is that there is nothing in the medical records that indicate that [Appellant] experienced erectile dysfunction nor that he complained of it to his physician nor that he inquired about it when seeing his physician. [Trial counsel] states that the reason he did not attempt to introduce the medical records into evidence is that they did not address the subject matter which Appellant wished to have addressed. [Trial counsel] also was aware that [Appellant] intended to take the witness stand and that he would testify that he suffered from erectile dysfunction and that such testimony would be sufficient to make the jury aware of this defense.

PCRA Court Opinion, 9/11/2014, at 4-5.

Based on the foregoing, we discern no error or abuse of discretion in the PCRA court's denial of relief on this claim. Particularly, counsel could not have been ineffective for failing to introduce medical records that did not support Appellant's claim. *See* N.T., 6/25/2014, at 9 (trial counsel testifying that "none of the records [he] reviewed showed that any of the medications would lead to erectile dysfunction."). Moreover, as evidenced by the PCRA court's analysis, Appellant failed to establish at the PCRA hearing that the medications and dialysis in fact caused erectile dysfunction. Thus, Appellant has not persuaded this Court that relief is due. ***See Miner***, ***supra***. Accordingly, we affirm the order of the PCRA Court.

Order affirmed.

- 9 -

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 11/18/2016